# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| v. | ) | Criminal No. 14-106 |
| | ) | |
| **SHELBY JEFFRIES, JR.** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

CONTI, Chief District Judge

On October 4, 2015, defendant Shelby Jeffries, Jr. ("defendant") filed a motion for bond. (ECF No. 317.) This court conducted a de novo review and considered the transcript of the hearing held before the magistrate judge who ordered defendant be detained pending trial, the pleadings in this case, the pretrial services report prepared by the United States Probation and Pretrial Services Office, and the arguments made and evidence presented during a hearing held on November 24, 2015. The court granted defendant's motion to the extent he requested a hearing with respect to his detention status and determined he met his burden with respect to showing that he is not a risk of flight, but denied the motion in all other respects. The court ordered that defendant be detained without bond pending trial. This opinion sets forth the reasons for the court's decision, which were detailed on the record.

## I. Background

### A. Procedural History

On May 21, 2014, a grand jury returned a six-count superseding indictment against defendant and seven co-defendants[1] at criminal action number 14-106. Defendant was named in count one of

---
[1] The following individuals are named along with defendant in the superseding indictment: Keith Eutsey, Che Hawkins, Isaiah Cross, Shaneeca Johnson, Rahde Williamson, Maurice Demery, and Rashawn Coward. (ECF No. 79.)

the superseding indictment charging him with conspiracy to possess with intent to distribute and to distribute one kilogram or more of heroin, from in and around January 2014, and continuing thereafter to in and around April, 2014, a violation of 21 U.SC. § 846. (ECF No. 80.) The offense at count one of the superseding indictment carries a statutory minimum term of imprisonment of ten years if the conviction is the defendant's first felony drug conviction that is final. 21 U.S.C. § 841(b)(1)(A)(i). The offense at count one of the superseding indictment carries a statutory minimum term of imprisonment of twenty years if an information is filed showing that the conviction of the offense in count one of the superseding indictment is the defendant's second felony drug conviction that is final. Id. The offense at count one of the superseding indictment carries a statutory mandated term of imprisonment of life if an information is filed showing that the conviction of the offense in count one of the superseding indictment is the defendant's third or subsequent felony drug conviction that is final. Id.

On June 2, 2014, a detention hearing was held before a magistrate judge. (ECF No. 131.) The magistrate judge determined the government met its burden to show by clear and convincing evidence that defendant posed a danger to the community and by a preponderance of the evidence that he was a risk of flight, and entered an order of detention for defendant pending trial. (ECF No. 132.)

On October 4, 2015, defendant filed the pending motion for bond. (ECF No. 317.) The government did not file a response in opposition to defendant's motion. On November 24, 2015, the undersigned judge held a de novo hearing with respect to defendant's detention status. After reviewing the transcript of the June 2, 2014, detention hearing, and taking into consideration the evidence and arguments presented by the parties at the hearing held on November 24, 2015, the court ordered defendant be detained pending trial.

    **B.**     **Factual Background**

At the detention hearing before the magistrate judge on June 2, 2014, the government presented the testimony of Karen Springmeyer ("Springmeyer"), an agent with the Federal Bureau of Investigation ("FBI"), who is assigned to FBI Greater Pittsburgh Safe Streets Task Force. (H.T. 8/4/2014 at 5-6.) At the hearing held before the undersigned judge on November 24, 2015, defendant presented testimony from his girlfriend Takieya Binion ("defendant's girlfriend"). Based upon the record and the pretrial services report, the following factual background was developed.

**1. The conspiracy charged against defendant in the superseding indictment against**

Springmeyer conducted an investigation of Anthony Berry ("Berry"), which involved intercepting his telephone conversations. (H.T. 6/2/2014 at 8.) Springmeyer learned from her investigation of Berry that Berry obtained drugs from Che Hawkins ("Hawkins"), one of defendant's co-defendants in this case. (Id.) Springmeyer began to investigate Hawkins and for approximately two months intercepted his telephone conversations. (Id. at 8, 20.) Springmeyer learned that Hawkins was a high-level heroin trafficker, i.e., he received shipments of 500 to 1,000 bricks of heroin from New Jersey to distribute to customers in the Pittsburgh, Pennsylvania area. (Id. at 8, 11.) Hawkins had connections in New Jersey and "would either send a courier to New Jersey to get the heroin for him from his supplier, or the supplier would come to the Pittsburgh area." (Id. at 8.)

Law enforcement conducted several traffic stops as part of the investigation of Hawkins, which included conducting traffic stops of the couriers sent by Hawkins, and obtained approximately $140,000 from those traffic stops, which is the equivalent of 1,000 bricks of heroin. (H.T. 6/2/2014 at 8.) Springmeyer testified about a traffic stop that occurred on April 3, 2014, with respect to her investigation of Hawkins:

> Again, [Hawkins] was conducting a transaction with his supplier in New Jersey. In this case, the supplier from New Jersey sent a courier to the Pittsburgh area. We surveilled this meeting, which was near the Swissvale exit off of 376. We saw Mr. Hawkins me[e]t with the courier, and performed the arrest after the transaction occurred. And in Mr. Hawkins' car we seized over 500 bricks of heroin. And we also

seized, it was in excess of $60,000 of US currency in the courier car that was headed back to New Jersey.

(Id. at 9.) A search warrant was conducted of Hawkins' residence and law enforcement found more than 100 bricks of heroin and an "owe sheet" in the residence. (H.T. 6/2/2014 at 9-10.) Springmeyer heard via the telephone intercepts Hawkins refer to the "owe sheet," which is piece of paper he used to track the amount of money that his customers owed him. (Id. at 9-10, 14-15.)

Springmeyer learned that Hawkins is defendant's half-brother and defendant is one of Hawkins' "main drug customers." (H.T. 6/2/2014 at 16.) Springmeyer testified that the name "Bubs" appeared on Hawkins' owe sheet, and that Hawkins referred to defendant during their daily telephone calls as "Bubs." (Id. at 17, 24.) Defendant's telephone was not targeted as part of the of a wiretap investigation in this case. (Id. at 22.) Defendant Springmeyer testified that defendant and Hawkins talked daily via the telephone and described their telephone conversations as follows:

> It's similar calls to that of…all of Che Hawkins' other customers, where he would often call them and find out how much money they had, currently had, how much they could give him, because they owe him a certain amount of money. So there's a lot of talk of how much you owe. How many bricks of heroin do you have left that you still need to sell. [Hawkins] would refer to his owe sheet or "the paper."
>
> For example, on March 8th, [Hawkins] is talking with [defendant] about how much money [defendant] owes him. [Hawkins] is comparing it to what he has on the paper, on his owe sheet. [Defendant] is saying, I still have 14 dips left, which "dips" is a slang term for a brick of heroin.
>
> …
>
> He also would talk about—[defendant] would tell…Hawkins what types of heroin stamp bags that his customers liked. For example, on the 15th [defendant] told…Hawkins that his people…don't want the "UPS," which UPS was one of the stamp names that, they want to "blueprints:" instead, which is another type of heroin stamp that [Hawkins] would receive. So they discuss, again, which types of heroin his customers preferred.

(H.T. 6/2/2014 at 16-17, 23, 25.) Springmeyer testified that, during one intercepted telephone conversation between defendant and Hawkins, defendant told Hawkins that he owed Hawkins $2,140 and Hawkins responded that his owe sheet indicated defendant owed him $4,750. (Id. at 26-27.)

4

### C. Defendant's Personal Background

#### 1. Personal Characteristics

Defendant was 32 years old as of November 24, 2015, i.e., the date of the detention hearing before the undersigned judge, and was incarcerated for approximately 18 months at that time. (Pretrial Services Report at 2; H.T. 11/24/15 at 12.) Defendant during his incarceration worked in the kitchen and did not violate the rules and regulations of the prison. (H.T. 11/24/15 at 12.) According to the pretrial services report, defendant is in good physical health, not under the care of a medical doctor, and is not prescribed any medication. (Pretrial Services Report at 2.) Defendant does not have a history of mental health issues. (Id.) Defendant reported he has lived in Munhall, Pennsylvania, which is located within the Western District of Pennsylvania, his entire life. (Pretrial Services Report at 2.) Defendant has a high school diploma. (Id.) Defendant does not have a valid United States passport or driver's license and has never traveled outside the United States. (Id.; H.T. 11/24/15 at 9.)

#### 2. Familial Associations

Defendant's mother is deceased. (Id.) Defendant's father and one of his sisters live in Duquesne, Pennsylvania, which is located within the Western District of Pennsylvania, and defendant's other sister lives in Braddock, Pennsylvania, which is located within the Western District of Pennsylvania. (Id.) Defendant has five children ranging in age from 8 to 14 years old. (Id.)

Defendant prior to his incarceration lived in a house with his girlfriend and her three children, ages 14, 17, and 20. (Id.; H.T. 11/24/15 at 7.) Defendant's girlfriend rented the house, which is equipped with a landline. (H.T. 11/24/15 at 9.) Defendant's girlfriend, who is employed by Family Hospice and Golden Living Center, was willing to serve as a third-party custodian for defendant. (H.T. 11/24/14 at 7-8, 10.) Defendant's girlfriend was present when law enforcement arrested him in May 2014 with respect to this case. (H.T. 11/24/15 at 7-8.) Defendant at the time of arrest did not resist being arrested, flee the scene, or accost the arresting officers. (Id. at 7.) The arresting officers

asked defendant's girlfriend if they could conduct a search of the residence, and she signed a consent form permitting them to search the residence. (Id. at 7, 11.) Law enforcement found a digital scale and two plastic bags at the residence that did not belong to defendant's girlfriend. (Id. at 11.)

### 3. Work History and Employment Prospects

Defendant was employed by Kings Clothing Store from December 29, 2011, until May 29, 2012. (Pretrial Services Report at 2.) According to the pretrial services report, defendant was unemployed for two years prior to his arrest in this case. (Id.) Defendant's girlfriend testified, however, that during the three years prior to defendant's arrest when she and defendant lived together, defendant sold vacuum cleaners for Kirby and worked at Knight's Barbershop for a period of time. (H.T. 11/24/15 at 8.) According to defendant's girlfriend, he was hired by Bob Evans prior to his arrest. (Id.)

### 4. Criminal History

On July 20, 2005, defendant was arrested by an officer from the McKeesport Police Department and charged with two counts of delivery/possession with intent to deliver a controlled substance, which is a felony offense, and two counts of possession of a controlled substance which is a misdemeanor offense, at case number CP12544-2005/K174720-0 ("case number 12455-2005"). On November 14, 2006, defendant pleaded guilty to the foregoing offenses and was sentenced to a term of imprisonment of twenty-three months and a term of probation of five years. On December 15, 2009, a bench warrant was issued for defendant based upon a violation of the term of probation of five years. On October 20, 2010, defendant was "resentenced" to a term of imprisonment of eleven and one-half months to twenty-three months.

On October 18, 2005, defendant—while on bond in case number CP12544-2005—was arrested for possession of a controlled substance, which is a misdemeanor offense, and delivery/possession with intent to deliver a controlled substance, which is a felony offense, at case

number CP16022-2005/K341394-4. The charge for delivery/possession with intent to deliver a controlled substance was withdrawn. On November 14, 2006, defendant pleaded guilty to possession of a controlled substance and no further penalty was imposed.

On December 10, 2009, defendant—while on bond in case number CP12544-2005—was arrested by an officer of the West Homestead Police Department and charged with delivery/possession with intent to deliver a controlled substance, which is a felony offense. On September 28, 2010, defendant pleaded guilty to the charge against him and was sentenced to a term of imprisonment of six to twelve years and a term of probation of two years.

On February 7, 2011, defendant—while on bond in case number CP12544-2005—was arrested by the Allegheny County Sherriff for disorderly conduct, which is a summary offense, and escape, which is a misdemeanor offense, at case number CR 1252-2011/NT 1135-2011. The charge of escape was withdrawn. On February 14, 2011, defendant pleaded guilty to disorderly conduct and was ordered to pay a fine and costs.

## II. Standard of Review

The court's standard of review of a magistrate judge's denial of pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

## III. Discussion

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court

may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

### A. Rebuttable Presumption

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . *(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)* [or] (B) an offense under section 924(c), 956(a), or 2332b of this title[.]

18 U.S.C. § 3142(e)(3) (emphasis added).

There is probable cause to believe defendant committed an offense that falls within the category of offenses listed in § 3142(e)(3)(A) because a grand jury returned an indictment charging defendant with conspiracy to possess with intent to distribute and to distribute one kilogram or more of heroin, from in and around January 2014, and continuing thereafter to in and around April, 2014, a violation of 21 U.SC. § 846. The maximum statutory penalty for the offense at count one is ten years if it is defendant's first felony drug conviction that is final, twenty years if it is defendant's second felony drug conviction that is final, or a mandatory term of imprisonment of life if it is defendant's third or subsequent felony drug conviction that is final. 21 U.S.C. § 841(b)(1)(A)(i). Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Defendant at the hearings before the magistrate judge and this court did not contest the application of the rebuttable presumption to this case.

B. **The § 3142(g) factors**

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g), which the court must consider in determining whether pretrial detention is warranted. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

C. **Danger to the Community**

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to

9

rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence, the presumption does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986). The combination of drugs and guns constitutes a very serious danger to the community. United States v. Pitts, Crim. No. 09-204, 2010 WL 3303800, at *4-5 (W.D. Pa. Aug. 19, 2010) ("Several district courts have found that the combination of guns and drugs constitutes a danger to the community.") (citing United States v. Levy, Crim. No. 08-393, 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008); United Sates v. Miller, Crim. No. 10-4058, 2010 WL 3035753, at *4 (N.D. Iowa Aug. 3, 2010); United States v. Francis, Crim. No. 01-60, 2001 WL 899635, at *5 (S.D. Ind. June 8, 2001)).

### 1. The nature and circumstances of the offense charged

The offense for which defendant is charged is a very serious drug offense involving a large amount of heroin and carries with it significant statutory mandatory minimum terms of imprisonment dependent on defendant's criminal history. The distribution of heroin has devastating effects on a community. Defendant in this case did not present evidence with respect to the first factor listed in § 3142, i.e., the nature and circumstances of the offense charged. This factor weighs in favor of defendant being detained pending trial.

### 2. The weight of the evidence against defendant

With respect to the second factor, i.e., the weight of the evidence against defendant, defense counsel argued that the government did not present evidence to show defendant's involvement in the conspiracy. (H.T. 11/24/15 at 13.) There, however, is significant evidence, which was presented to the magistrate judge by the government via the testimony of Springmeyer, which was reviewed by this court. Springmeyer testified that the FBI investigation revealed, among other things, that:

− Hawkins is a high-level heroin dealer who obtains heroin in large amounts, i.e., 500 to 1,000 bricks at a time, from New Jersey to distribute to lower level dealers such as Berry and defendant;

− Hawkins is defendant's half-brother;

− Hawkins and defendant spoke daily via the telephone about the distribution of heroin; and

− Defendant's nickname "Bubs" appeared on Hawkins' owe sheet, which detailed to whom Hawkins sold heroin and the amount of money they owed Hawkins.

The foregoing evidence at this stage of the proceedings has significant weight; indeed, it shows that defendant was in daily contact with his half-brother, who is a high-level heroin dealer, about the distribution of heroin, and that defendant was buying heroin from Hawkins to sell to his own customers. This factor, therefore, weighs against defendant being released pending trial.

### 3. The history and characteristics of defendant

With respect to defendant's personal characteristics, he presented evidence that he has strong community ties to the Western District of Pennsylvania[2] and family ties to his girlfriend, with whom he resides as well as with his father and sisters, with whom he has daily contact. Defendant is a lifelong resident of the Western District of Pennsylvania. Defendant's girlfriend testified that she is willing to serve as third-party custodian for him.

Defendant has a minimal employment history and no financial resources. According to the pretrial services report, defendant was unemployed for the two years prior to his incarceration.

---

[2] As the court noted on the record at the hearing on October 7, 2015, community ties have limited weight in the context of assessing whether a defendant presents a danger to the community. United States v. Delker, 757 F.2d 1390, 1396 (3d Cir. 1985).

Defendant's girlfriend testified, however, that defendant had some employment during that time. If defendant's girlfriend's testimony about defendant's employment history is true, defendant's alleged participation in the conspiracy charged in this case occurred while defendant was otherwise employed.

Defendant has had frequent interactions with law enforcement involving drugs and indicia of drug distribution; indeed, defendant has two felony drug convictions. Defendant sustained the second felony drug conviction while serving a term of probation for the first drug conviction. Defendant has appeared in court for court proceedings.

Despite defendant's community and family ties, his lack of meaningful employment and criminal history, which includes two felony drug convictions, causes this factor to weigh against his release pending trial.

### 4. The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release

With respect to the fourth factor, the danger posed to the community if defendant was released, defendant argued that he did not pose a danger to the community because his alleged contacts with respect to drug distribution were arrested and are incarcerated in this case. Defendant's argument is not sufficient for this factor to weigh in his favor.

The court must consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. In other words, the court must *predict* whether defendant is likely to engage in drug trafficking if released pending trial. Perry, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior[,]" i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses."). "Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions." Id. at 114. The court, however, can only look to the record before it.

Defense counsel argued that defendant should be released pending trial, his girlfriend should serve as a third-party custodian, and he should be required to obtain employment or perform volunteer service. Defendant, however, allegedly participated in the conspiracy charged in this case while living with his girlfriend, does not have a meaningful employment history or any financial resources, and sustained a second felony drug conviction while serving a term of probation for a first felony drug conviction. Under those circumstances, releasing defendant into his girlfriend's custody and requiring him to be employed or perform volunteer service would not ensure the safety of the community. In other words, defendant presents a danger to the community that he will continue to traffic in drugs if released pending trial, and there are no conditions or set of conditions that will ensure the safety of the community if defendant is released pending trial.

5.  **Conclusion**

Defendant did not present argument or evidence sufficient to rebut the presumption of detention in this case. The seriousness of the offense, the weight of the evidence, the danger he poses to the community, and the presumption, which retains evidentiary weight, all weigh in favor of detention in this case. Under those circumstances, even if defendant had rebutted the § 3142(e) presumption, this court finds, after considering the record as a whole, that the government showed by clear and convincing evidence there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking while on release.

D.  **Risk of Flight**

The evidence presented by defendant, i.e., his strong ties to the community and his family and his record of appearance in other criminal proceedings, rebuts any presumption in this case that he is a risk of flight, and the government did not prove by a preponderance of the evidence—even considering the evidentiary weight of the presumption and the factors discussed above—that defendant is a risk of flight. "The purpose of a Section 3142(e) risk of flight determination…is to

secure the appearance of the accused at trial." United States v. Himler, 797 F.2d 156, 161-62 (3d Cir.1986) (citing United States v. Maull, 773 F.2d 1479 (8th Cir. 1989) (risk of flight shown by prior attempt to leave the country in order to flee prosecution); United States v. Vortis, 785 F.2d 327 (D.C.Cir.1986) (risk of flight shown by possession of fraudulent passports and a planned trip to Liberia)). Although the government only needs to prove defendant is a risk of flight by a preponderance of the evidence, Himler, 797 F.2d at 161, the court concludes, after considering the record as a whole and the § 3142(g) factors, that the government did not establish that risk.

### IV. Conclusion

Defendant did not meet his burden to set forth some evidence under the § 3142(e) factors to rebut the presumption of detention in this case with respect to the danger he poses to the community. Even if defendant met his burden, however, the government showed by clear and convincing evidence that defendant poses a risk of danger to the community, i.e., he is likely to engage in drug trafficking if released prior to trial, which cannot be mitigated by imposing conditions of release. Defendant rebutted the presumption that he is a risk of flight if release pending trial. The government did not show that it is more likely than not that he will flee if released pending trial. The court granted defendant's motion to the extent he requested a hearing with respect to his detention status and for the reasons set forth above determined he met his burden with respect to showing that he is not a risk of flight, but denied the motion in all other respects and ordered defendant be detained pending trial.

An appropriate order will be entered.

BY THE COURT,

Dated: May 3, 2016
/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge