**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | Criminal No. 14-106 |
| v. | |
| SHELBY JEFFRIES, JR., | |
| *Defendant*. | |

**OPINION**

CONTI, Senior District Judge.

### I.      Introduction

Pending before the court are motions for compassionate release filed under the First Step

Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, by defendant Shelby

Jeffries, JR. ("Jeffries"). (ECF Nos. 705, 764.)[1] Jeffries seeks release under 18 U.S.C. §

3582(c)(1)(A), which is known as the "compassionate release" provision of the statute. United

States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019) (per curiam). Jeffries seeks

compassionate release from Federal Medical Center Lexington ("FMC Lexington") where he is

currently incarcerated because the serious risk posed to him by COVID-19 due to his medical

conditions and he wants to act as the caregiver to his father, Shelby Jeffries, Sr. ("Jeffries' father").

The government opposes Jeffries' motion arguing, among other things, that he did not properly

exhaust his administrative remedies with respect to his request to serve as a caregiver to his father,

---

[1]     Jeffries' pro se motion for compassionate release is ECF No. 705 and his counseled motion
for compassionate release is ECF No. 764.

and the court should deny the motion with respect to Jeffries' medical condition because he is vaccinated against COVID-19. (ECF No. 776.)

For the reasons set forth in this opinion, the court cannot grant Jeffries compassionate release. First, Jeffries did not properly exhaust his administrative remedies in the BOP with respect to his request for compassionate release to serve as the caregiver for his father. Second, Jeffries did not provide sufficient evidence to the court to show that "extraordinary and compelling" reasons exist for his compassionate release. Currently, there is one case of COVID-19 at FMC Lexington and Jeffries received both doses of the Moderna vaccine for COVID-19. Under those circumstances, any risk posed to Jeffries by COVID-19 (or its variants) is speculative. Jeffries motions for compassionate release will, therefore, be denied.

## II.     Procedural History

On May 4, 2016, Jeffries pleaded guilty to count one of the second superseding indictment, i.e., conspiracy to distribute and possess with intent to distribute 1 kilogram or more of heroin, a Schedule I controlled substance, from December 2013 to April 2014, in violation of 21 U.S.C. § 846.

On August 18, 2016, this court accepted the parties' binding plea agreement entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and sentenced Jeffries to a term of imprisonment of 10 years (120 months) and a term of supervised release of 5 years.[2] (ECF No. 452 at 2-3.) In the binding plea agreement, the parties agreed to, among other things, the term of imprisonment and term of supervised release. The government in the plea agreement agreed not to file an information, pursuant to 21 U.S.C. § 851, stating a prior conviction as a basis for increased punishment.

---

[2]      At the time of sentencing, the sentencing guideline range for a term of imprisonment in this case was 262 months to 327 months. (H.T. 3/31/2021 (ECF No. 774) at 15.)

On June 29, 2020, Jeffries, proceeding pro se, filed the pending motion for compassionate release. (ECF No. 705.) On July 27, 2020, the court appointed counsel for Jeffries. (ECF No. 708.) From August 2020 through November 2020, Jeffries' counsel filed three motions to extend the deadline for his counsel submission, which the court granted. (ECF Nos. 710, 715, 730, 731, 743.)

On February 9, 2021, after counsel for Jeffries did not file a counseled submission, the court held a telephonic status conference. Counsel for Jeffries requested a 60-day continuance to obtain the entirety of Jeffries' medical records from the Federal Bureau of Prisons ("BOP"). On March 2, 2021, the court held a second status conference at which it set a briefing schedule and scheduled a hearing on Jeffries' motion for compassionate release. Pursuant to the briefing schedule, Jeffries' counsel filed a motion for compassionate release, (ECF No 764), and a supplement to the motion, (ECF No. 768), and the government filed a response in opposition to the counseled motion, (ECF No. 770).

On March, 31, 2021, the court held an evidentiary hearing on Jeffries' motion for compassionate release. (Hearing Transcript ("H.T.") 3/3/1/2021 (ECF No. 774).) Jeffries, Jeffries' father, and Takieya Binion ("Binion"), Jeffries' fiancé, testified on Jeffries' behalf. Jeffries entered 12 exhibits into evidence. (Id. at 5-6.) The government entered 9 exhibits into evidence. The court ordered the transcript at the joint cost of the parties. (Id. at 53-54.)

On April 29, 2021, Jeffries' counsel filed a supplemental brief to address issues raised by the court during the hearing. (ECF No. 775.) On May 13, 2021, the government filed a response to Jeffries' supplemental brief. (ECF No. 776.)

Jeffries' motions for compassionate release are now ripe for disposition.

### III.    Evidence Presented

Jeffries is 38 years old, (ECF No. 773 at 2), has been incarcerated since May 29, 2014, and is currently in the custody of the BOP at FMC Lexington, (H.T. 3/31/2021 (ECF No. 774) at 6).

His expected "home detention eligibility date" is December 1, 2021. (ECF No. 768-1 at 1.) His expected release date from BOP custody is June 1, 2022. (Id.)

Jeffries is six feet tall, weighs 260 pounds, and has a body mass index ("BMI") of 31, which qualifies him as obese. (H.T. 3/31/2021 (ECF No. 774) at 9.) His weight was stable throughout the COVID-19 pandemic. (Id.) Jeffries is not on any medication. (ECF No. 767 at 3.) He has "bilateral edema[,]" i.e., swelling in his lower extremities. (ECF No. 767 at 2.) The condition "comes and goes" and "[t]he swelling usually resolves with…[elevating] his leg or rest." (ECF No. 767 at 2.) Jeffries has a history of high blood pressure readings, i.e., a history of hypertension. (ECF No. 773 at 2-3; ECF No. 773-1 at 2, 5.) Jeffries' medical records indicate that he has a "history of hypertension," (ECF No. 773-1 at 5), but as recently as March 2, 2021, his medical records from FMC Lexington provide that he denied having a diagnosis of hypertension, (ECF No. 773 at 2-3). On March 2, 2021, a healthcare provider at FMC Lexington ordered that Jeffries receive an "EKG" and that his blood pressure should be taken every two weeks for a period of 60 days. (ECF No. 773 at 3.) Jeffries believes he is prediabetic, but he has not been diagnosed with diabetes. (H.T. 3/31/2021 (ECF No. 774) at 12; ECF No. 767 at 6.) Jeffries explained his medical care at FMC Lexington as follows:

> I went down on sick one time because my ankles swelled up, and they took my blood pressure. It was 142 something over 90-something, and the lady said she was going to put me on a callout to come down once a week to get my blood pressure taken. And I told them I was supposed to have been on hypertension pills, but they never—it wasn't this jail's fault.

> I was at Hazelton, and they were supposed to give it to me, but I was in transit during that time. I was in transit for four and a half months. They were supposed to give me the pills, but they never gave them to me. When I got down here, I notified them I was supposed to be on a blood pressure pill, but I never received it.

> Every time I asked about my high blood pressure, it's high. But they put me on a callout, they put me on a—they put the little stickers on, an EKG. And I tell

them I'm supposed to have been down here for the high blood pressure, but I
haven't received no medicine yet.

(H.T. 3/31/2021 (ECF No. 774) at 8, 24-25.) On February 17, 2021, Jeffries received his first dose
of the Moderna COVID-19 vaccine, and on March 18, 2021, he received the second dose of the
Moderna COVID-19 vaccine. (ECF No. 773-2 at 2-4; H.T. 3/31/2021 (ECF No. 774) at 11-12.)

According to Jeffries, the officials at FMC Lexington "make the wrong decisions" with
respect to the COVID-19 pandemic, i.e., "they continually put inmates' lives in jeopardy[,]" and
do not utilize social distancing or "bleach cleaning products" to fight against the spread of COVID-
19 within the facility. (H.T. 3/31/2021 (ECF No. 774) at 7.) Jeffries described his living situation
at FMC Lexington as follows:

> It's like about 96 inmates on a dorm with us. It's like---it's movement. I'm
> in a one-man cell now. Before I was in a bus stop. There was 18 people in there.
> Like it was just a bus stop of 18 beds. But we got on-man cells and we got bus
> stops, but it's 96 people. And we're not locked in. We're not restricted or nothing.
> …
> It's about 15, 16 got to share one shower. We get one—we got two toilet
> stalls, two bathroom stalls. So it's like 15, 16 of us take one—we use one shower,
> because we're only allowed in one lane.
> …
> We all go down, pick up our trays, and we come back. We can either eat
> in our cell or, you know, eat out where everyone eats.

(H.T. 3/31/2021 (ECF No. 774) at 24, 26.) As of March 31, 2021, no one on Jeffries' pod had
COVID-19. He explained: "When they would get COVID, they get placed into another unit. They
get quarantined." (Id. at 24.)

Jeffries has completed approximately 21 courses while incarcerated. (ECF No. 764-2 at 6.)
As of March 31, 2021, he was enrolled in the BOP's Residential Drug Abuse Program ("R-DAP").
(ECF No. 764-2 at 9.) Jeffries has sustained disciplinary infractions while incarcerated, including
a disciplinary infraction for assaulting another inmate on February 25, 2018. (H.T. 3/31/2021 (ECF

No. 774) at 16.) During the assault, Jeffries approached another inmate,[3] and punched and kicked him. After the assault, Jeffries attempted to conceal his identity to avoid being disciplined for his actions.[4] (Id. at 17; ECF No., 771-4 at 4.) The assault was the only "fight" Jeffries has been in during his incarceration. (H.T. 3/31/2021 (ECF No. 774) at 21.)

On April 15, 2020, Jeffries submitted an "Inmate Request to Staff" seeking compassionate release from the warden at Federal Correctional Institution Berlin ("FCI Berlin") where he was incarcerated at that time. (ECF No. 771-1 at 2.) The only reason listed for compassionate release on the request is "Medical conditions: Pre-Diabetic, Obese[.]" (Id.) On April 22, 2020, the warden at FCI Berlin responded to Jeffries' request as follows:

> Based upon your history of escape, your history of violence while incarcerated, your current status as a Medical Care Level 1, and our current lack of any staff or inmate COVID-19 cases, we will not pursue a request for compassionate release under extraordinary or compelling circumstances at this time. Furthermore, your present release address in Alleghany [sic] County, Pennsylvania, is an area experiencing a more significant COVID-19 outbreak compared to northern New Hampshire.

(ECF No. 771-2 at 2.)

Jeffries has five children, three of whom are under the age of 18. (H.T. 3/31/2021 (ECF No. 774) at 13.) All three of his minor children have adult caretakers. (Id. at 13.) Jeffries plans to take custody of his minor son, who is living with Jeffries' sister, upon his release from imprisonment. (Id. at 13-14.)

---

[3]     According to Jeffries, the inmate he assaulted approached him first with physical contact. (H.T. 3/31/2021 (ECF No. 774) at 22.)

[4]     At Federal Correctional Institution Loretto, a hearing was conducted with respect to Jeffries' assault of another inmate. (H.T. 3/31/2021 (ECF No. 774) at 16; ECF No. 771-4 at 2.) A disciplinary hearing officer found that Jeffries committed the assault, i.e., he punched and kicked another inmate. (Id. at 17.) Jeffries' discipline was upheld on appeal with the BOP. (Id.)

As of March 31, 2021, Jeffries planned to live with Binion and her two children (who are 20 years old and 23 years old) at her home upon his release from imprisonment. (H.T. 3/31/2021 (ECF No. 774) at 9, 35.) According to Jeffries' counsel, after the hearing on March 31, 2021, "the family…conferred[,] and the plan now is to move Mr. Jeffries' father into Ms. Binion's home so that he would be living with Mr. Jeffries and Ms. Binion." (ECF No. 775 at 8.) Binion and Jeffries have been in a relationship for approximately 12 years. (Id. at 38.) Binion is a licensed practical nurse and is currently employed in that capacity. (Id. at 35-36.) She testified that she would not permit Jeffries to partake in illegal activities if he lived in her home and that she would notify federal officials if he violated conditions of his release. (Id. at 36.) Jeffries lived with Binion when he committed the offense of conviction in this case. (Id. at 39.) Binion did not know Jeffries was trafficking heroin at that time. (Id. at 39.)

Jeffries upon his release from imprisonment intends to serve as a caretaker to his father, who is 72 years old. (Id. at 10, 28.) Approximately ten years ago, Jeffries' father suffered a stroke when he was sixty-three years old. (Id. at 10, 20.) He fell and broke his hip; he has a pin his hip. (Id. at 10, 29.) As a result of the stroke, Jeffries' father "can't do anything with…[his] right arm and…[his] right leg." (Id. at 29.) According to Binion,[5] Jeffries' father can move his right hand "a little" but he does not have control of his right hand. (Id. at 37.) Jeffries' father's ability to provide care for himself is "a little worse" than it was ten years ago. (Id. at 21.) Jeffries' father explained:

---

[5]     Jeffries attached two additional exhibits to his counseled brief (ECF No. 775). The first exhibit is a letter from Binion in which she further describes the caretaking needs of Jeffries' father. (ECF No. 775-1 at 1.) The second exhibit is a "Barthel Index of Activities of Daily Living[,]" which purportedly was completed by Binion with respect to Jeffries' father. (ECF No. 775-2 at 1.) The court need not decide whether it may consider these exhibits to decide the motion for compassionate release because—as explained below—Jeffries did not exhaust his administrative remedies within the BOP with respect to his request to serve as the caregiver to his father. Whether those exhibits are properly before this court, therefore, is moot.

Well, I used to drive. I used to walk up and down steps. But the doctor, when he gave me the hip, he put a pin in my hip, and I've been out of it since then. That was about '14. And I just can't walk with my hip like that.

(H.T. 3/31/2021 (ECF No. 774) at 29.) Jeffries' father can walk "[a]bout 3 or 4 feet" by himself.

(Id. at 29.) Jeffries' father is in bed all day, except for when he uses a walker to stand up and

exercise two times per day. (Id. at 31, 32-33.) Jeffries' father can feed himself and brush his teeth.

(Id. at 33.) According to Binion, Jeffries' father needs assistance getting dressed because he cannot

hold onto the walker and pull up his pants on his own and he cannot button his shirt. (Id. at 37.)

"[T]wo men that are across the street" from Jeffries' father provide him some assistance; Jeffries'

father waits until they are available to help him and they "help…[him] down the steps and out on

the porch and into their car." (Id. at 29-30.) Jeffries' father's fiancé is 68 years old, lives with him,

and is currently providing care for him, e.g., cooking for him. (H.T. 3/31/2021 (ECF No. 774) at

25, 30.) Jeffries' father's fiancé hurt her knee about three or four years ago "[s]o she's not much

help" to him. (Id. at 30.) Currently, if Jeffries needed assistance, he would call the ambulance or

his fiancé if she was off from work. (Id. at 32.) Jeffries' father believed Jeffries would help him

"immensely" upon his release from prison. (Id. at 30.) Jeffries intends to obtain a job upon his

release from imprisonment. (H.T. 3/31/2021 (ECF No. 774) at 11.)

## IV.   Discussion

### A.  Statutory Exhaustion Requirements of 18 U.S.C. § 3582(c)(1)(A)

A district court has only *limited* authority to "modify a term of imprisonment once it has

been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The

Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general

rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir.

2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s]' to the

general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—

> (1) in any case--

>> (A) the court, upon motion of the Director of the Bureau of Prisons, or **upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier**, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

>>> (i) extraordinary and compelling reasons warrant such a reduction; or

>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A) (emphasis added)s. Pursuant to the foregoing statutory provision, a defendant seeking compassionate release must satisfy his or her burden to show that he or she exhausted remedies within the BOP before he or she filed the motion for compassionate release with the district court.

United States v. McNair, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (quoting United States v. Sellers, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). Proper exhaustion of administrative remedies is a threshold issue, United States v.

9

Raia, 954 F.3d 594, 597 (3d Cir. 2020) (explaining that a defendant's failure to exhaust in accordance with § 3582(c)(1)(A) "present[ed] a glaring roadblock foreclosing compassionate release"), that is mandated by statute and cannot be waived by the court or the government. United States v. Valentine, No. 3:16-CR-206, 2020 WL 6381456, at *4 (M.D. Pa. Oct. 30, 2020).

The exhaustion requirement is strictly construed, and courts within the Third Circuit hold that "issue exhaustion" applies to § 3582(c)(1)(A). McNair, 481 F. Supp. 3d at 366 (citing United States v. Valenta, Crim. No. 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020); United States v. Pitt, Crim. No. 97-108, 2020 WL 2098272, at *2 (M.D. Pa. May 1, 2020); United States v. Wilson, Crim. No. 14-209, 2020 WL 1975082, at *4 (E.D. Pa. Apr. 24, 2020); United States v. Mogavero, Crim. No. 15-74, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020)).[6]

For example, in McNair, the defendant requested compassionate release from the warden of his prison due to his remorse for his criminal behavior and rehabilitative efforts while incarcerated. McNair, 481 F. Supp. 3d at 366. The defendant filed a motion for compassionate release in the district court and wrote the court numerous letters in support of the motion. In one of the letters, the defendant argued he was entitled to compassionate release because he was at

---

[6]    Many district courts outside the Third Circuit that have considered the issue have denied motions for compassionate release because the defendant did not raise the same issues in their requests for release addressed to the BOP. See e.g., United States v. Hernandez, Crim. A. No. 13cr4467-JAH, 2020 WL 3051105 (S.D. Cal. June 5, 2020); United States v. Baye, Crim. A. No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *5 (D. Nev. June 2, 2020); United States v. Shakur, Crim. A. No. 82 CR 312 (CSH), 2020 WL 2749686 (S.D.N.Y. May 27, 2020); United States v. Samak, Crim. A. No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020); United States v. Heath, 2:17-CR-0133-TOR, 2020 WL 2114364 (E.D. Wash. May 4, 2020); United States v. Grimes, Crim. A. No. 18-CR-6101 CJS, 2020 WL 2098106 (W.D.N.Y. May 1, 2020); United States v. Dougherty, 2:18-cr-229-2, 2020 WL 1909964, at *2 (S.D. Ohio Apr. 20, 2020); United States v. Mollica, Crim. A. No. 2:14-CR-329-KOB, 2020 WL 1914956, at *6 (N.D. Ala. Apr. 20, 2020); United States v. Jenkins, Crim. A. No. 4:15-CR-3079, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020); United States v. Mogavero, Crim. A. No. 2:15-cr-00074-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020).

high risk to suffer grave illness if he contracted COVID-19 because he had asthma and "acute bronchopneumonia." Id. at 364. The government argued that the defendant did not properly exhaust his administrative remedies with respect to his request for compassionate release based upon his medical conditions and COVID-19 because he did not raise that specific issue with the warden. The defendant argued that § 3582(c)(1)(A) does not mandate that a defendant raise *every* extraordinary and compelling reason for compassionate release to the warden. Id. at 365.

The district court agreed with the government and held that because the defendant did not present his medical conditions and COVID-19 as reasons for his compassionate release in his request to the warden, he did not properly exhaust his administrative remedies with respect to that issue under § 3582(c)(1)(A). Thus, the court could not decide the motion for compassionate release with respect to that issue. The court recognized that some district courts outside the Third Circuit have created judicial exceptions to § 3582(c)(1)(A), but it declined to follow their reasoning. Id. (citing United States v. Torres, 464 F. Supp. 3d 651 (S.D.N.Y. June 1, 2020)).[7] The court in

---

[7]    In Torres, the court relied upon Sims v. Apfel, 530 U.S. 103, 107 (2000), which addressed the exhaustion requirements in a Social Security Administration case, to hold that it could decide issues raised in a motion for compassionate release that were not raised before the BOP in the first instance. The court in McNair, however, explained that the exhaustion requirements set forth in § 3582(c)(1)(A) are distinguishable from the requirements applicable to a Social Security case:

> While Sims addressed the question of whether issue exhaustion is applicable to certain statutory or judicially created exhaustion schemes, it did not create a bright-line rule. Indeed, the holding of Sims, that issue exhaustion is not required in Social Security appeals, is distinguishable because it was based on the unique structure of Social Security proceedings. See Sims, 530 U.S. at 110–11, 120 S.Ct. 2080. Critically, the Sims Court highlighted that an issue exhaustion requirement is inappropriate in such circumstances because the Social Security Appeals Council, "does not depend much, if at all, on claimants to identify issues for review," and the Social Security Administration regulations do not require issue exhaustion. Id. at 112, 120 S.Ct. 2080. While Torres suggests that the BOP similarly does not rely on inmates to identify all grounds that may exist for compassionate release, there is simply no support for that suggestion. Indeed, the opposite is true. BOP regulations require that requests for compassionate release be made in writing and contain, at a minimum, "[t]he extraordinary or compelling circumstances that the inmate believe warrant consideration." C.F.R. §

McNair explained that § 3582(c)(1)(A) must be strictly construed, and the court could not read exceptions into the statute that Congress did not place within the statutory text. Id. at 366 (citing United States v. Epstein, No. 14-287, 2020 WL 1808616, *2–5 (D.N.J. Apr. 9, 2020)).[8] The court denied the motion for compassionate release with respect to the issues raised therein that were not raised before the BOP. Id.

---

571.61(a)(1); see also United States v. Alderson, No. 18-20348, 2020 WL 4696599, at *2 (E.D. Mich. Aug. 13, 2020) ("BOP regulations state that a prisoner must present to the agency '[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration.' "); United States v. Gordon, 478 F. Supp. 3d 600, 602 n.2 (E.D. Mich. Aug. 12, 2020) ("If the alleged 'extraordinary or compelling circumstances' are not presented, the BOP has not had an opportunity to address them and the prisoner's claim has not been fully exhausted.").[5] In other words, the regulations require the inmate to identify the compelling reasons justifying release. Sims counsels that where agency regulations require issue exhaustion, "courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." 530 U.S. at 108, 120 S.Ct. 2080. Here, the Court must enforce the BOP regulations to ensure that requests for compassionate release are properly exhausted. The Torres decision, on the other hand, permits inmates to bypass the exhaustion requirement.

McNair, 481 F. Supp. 3d at 367–68.

[8]      In Epstein, the court explained that the Supreme Court of the United States has held that the statutory exhaustion requirements of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), must be strictly construed and are not susceptible to judicially-created exceptions, even in exceptional circumstances. Epstein, 2020 WL 1808616, at *3. The court in Epstein analogized the statutory exhaustion requirements of § 3582(c)(1)(A) to the statutory exhaustion requirements of the PLRA, and held:

The same rule applies to the statutory text here. Section 3582(c)(1)(A) unambiguously instructs that a defendant can only bring a motion to court "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." This requirement is imposed by the statute itself, and is not judicially created.

Epstein, 2020 WL 1808616, at *3. Because the defendant in Epstein did not properly exhaust his administrative remedies within the BOP and the court did not have the authority to create a judicial exception to the statutory exhaustion requirement set forth in § 3582(c)(1)(A), it denied the defendant's motion for compassionate release. Id. at *4.

Here, Jeffries properly exhausted his administrative remedies under § 3582(c)(1)(A) to the extent he argues he is entitled to compassionate release based upon his medical conditions and COVID-19. Although Jeffries in his request to the warden only listed his prediabetes and obesity as a reason for his release, the response by the warden shows that the warden considered his request in light of his status as a "Medical Level 1" and the COVID-19 pandemic. Jeffries, however, did not properly exhaust his administrative remedies to the extent he seeks compassionate release before this court to act as the caregiver for his father. Jeffries' request to the warden does not contain any reference to his father or Jeffries' need to provide a family member care. Under those circumstances, and because this court cannot create an exception to the statutory exhaustion requirement set forth in § 3582(c)(1)(A), the motions for compassionate release will be denied without prejudice with respect to Jeffries' request for compassionate release based upon his need to provide care to his father. The court must still address the motions with respect to the matters that were fully exhausted, i.e., Jeffries' medical conditions and the COVID-19 pandemic.

### B.  Three-Part Analysis Set forth in 18 U.S.C. § 3582(c)(1)(A)

Pursuant to § 3582(c)(1)(A), if a defendant properly exhausts his or her administrative remedies within the BOP, the district court engages in a *three-part analysis* to determine whether a defendant is entitled to compassionate release. First, "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Second, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they

are applicable."[9] Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). Third, the court must consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1, n.2 (3d Cir. Oct. 29, 2020).

Based upon the foregoing, to grant Jeffries compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors; and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Jeffries bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce *evidence* to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL

---

[9]     The factors set forth in 18 U.S.C. § 3553(a) are:

–   the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

–   the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

–   the sentencing range established by the Sentencing Commission, § 3553(a)(4);

–   any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

–   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

–   the need to provide restitution to any victims of the offense, § 3553(a)(7).

5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### 1.  Extraordinary and Compelling Reasons

Prior to the enactment of the First Step Act on December 21, 2018, § 3582(c)(1)(A) provided that only the Director of the Bureau of Prisons ("BOP") could file a motion for a sentence reduction under § 3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." Handerhan, 789 F. App'x at 925 (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old,

experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less....The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at \*7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act...[and] the District Courts are divided on whether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director." Handerhan, 789 F. App'x. at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at \*2 (D. Me. July 11, 2019)). While U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act amendments, the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reductions under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at \*6-7 (W.D. Pa. May 29, 2020) (holding the court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence).[10]

---

[10]      This conclusion is shared by a "vast majority" of courts that considered "whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences" under the catchall provision of U.S.S.G. § 1B1.13. Adeyemi, 2020 WL 3642478, at \*10 (collecting decisions); United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at \*3 (E.D. Pa. Aug. 19, 2020) (finding that district courts "overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"). For example, the court in Adeyemi explained that the directive in U.S.S.G. § 1B1.13 that the Director of the BOP determines whether "other reasons" exist for the compassionate release of a defendant is not authoritative because it contradicts with the plain language of 18 U.S.C. § 3582(c)(1)(A), which requires the court to find extraordinary and compelling reasons for a defendant's release. Adeyemi, 2020 WL 3642478, at \*14-15 (citing United States v. LaBonte, 520 U.S. 751, 764 (1997); Stinson v. United States, 508 U.S. 36, 37 (1993)).
        The issue is pending before the Third Circuit Court of Appeals in United States v. Andrews, No. 20-2768, which is scheduled for submission to the panel on March 16, 2021. United States v. Avery, No. CR 04-243-01, 2021 WL 949482, at \*1 (E.D. Pa. Mar. 12, 2021). The court in Avery

16

"The starting point in discerning congressional intent is the existing statutory text[.]" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). "Extraordinary and compelling" is not defined by statute, and, therefore, the court must give the terms their "'ordinary meaning.'" United States v. Diallo, 575 F.3d 252, 256 (3d Cir. 2009) (quoting Moskal v. United States, 498 U.S. 103, 108 (1990)). The court in Somerville explained:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

Jeffries argues that he should be granted compassionate release because his medical conditions, i.e., his obesity, hypertension, and edema, place him at high risk for grave illness or death if he contracts COVID-19. As discussed above, Jeffries has the burden of proof to show that those medical conditions in light of the COVID-19 pandemic constitute extraordinary and compelling circumstances for his compassionate release. The court in Somerville considered decisions from federal courts across the United States in which incarcerated defendants sought

---

explained:
> The two issues in Andrews are whether district courts have the authority to identify other extraordinary and compelling reasons supporting a sentence reduction; and whether the First Step Act's change to the stacking penalties in Section 924(c) constitutes an extraordinary and compelling reason.

Id. at *1 n.1.

compassionate release in light of the COVID-19 pandemic and established a two-part analysis for

courts to use to determine whether the COVID-19 pandemic represents extraordinary and

compelling reasons for a defendant's release. Id. at *4. The court explained:

> While the Third Circuit has not articulated a definitive standard to be applied to
> § 3582(c) motions in this context, it has observed generally that the mere
> "existence of some health risk to every federal prisoner as the result of this
> global pandemic does not, without more, provide the sole basis for granting
> release to each and every prisoner[.]" United States v. Roeder, 807 Fed.Appx.
> 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking
> release due to COVID-19 must at least show: (1) a sufficiently serious medical
> condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave
> illness or death if infected by COVID-19; and (2) an actual, non-speculative
> risk of exposure to COVID-19 in the facility where the prisoner is held.

Id. (emphasis added); see United States v. Doe, 833 F. App'x 366, 367 (3d Cir. 2020) (per curiam)

(affirming the district court's decision denying the defendant's motion for compassionate release

because despite the defendant's health conditions, his risk of contracting COVID-19 at his federal

institution was speculative).

The foregoing two-part test must be modified in light of the vaccinations that are occurring

in BOP facilities. Even if an inmate has serious underlying medical conditions and faces a non-

speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from

contracting the virus or significantly reduce that inmate's risk of infection. Thus, the court will

apply a modified two-part test in situations where a defendant has been vaccinated to determine

whether to grant the defendant compassionate release. United States v. Mendoza, No. CR 06-167,

2021 WL 1312920, at *5 (W.D. Pa. Apr. 8, 2021). Pursuant to the modified two-part test, a

defendant has the burden to show:

> (1) the defendant faces a uniquely high risk of grave illness or death if infected (or
> reinfected) with the COVID-19 virus, considering his or her underlying medical
> condition and age and the protective effects of the vaccine; and

(2) the defendant faces a non-speculative risk of contracting (or becoming reinfected with) the COVID-19 virus, considering both the risk of exposure at the defendant's BOP facility and the preventative effects of the vaccine.

Id.

With respect to the first prong of the modified two-part test, Jeffries argues he is at high risk of suffering grave illness or death if he contracts COVID-19 because he is obese and has prediabetes and edema. The government argues that the evidence presented to the court is not sufficient to prove it is more likely than not that Jeffries is obese or has prediabetes, and, in any event, Jeffries is vaccinated against COVID-19. The issues raised by the government with respect to the first prong, however, are moot because Jeffries failed to satisfy the second prong, i.e., he failed to show that despite his vaccination against COVID-19 there exists an actual, non-speculative risk of him being exposed to COVID-19 at FMC Lexington and becoming infected with the virus. See Doe, 833 F. App'x at 368. The Federal Bureau of Prisons, as of the date of this opinion, reports that *0* inmates (out of 1,163 inmates at the facility) and *2* staff member are infected with COVID-19 at FMC Lexington.[11] FEDERAL BUREAU OF PRISONS, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited on May 19, 2021). Jeffries testified that as of March 31, 2021, no one on his pod had COVID-19. (H.T. 3/31/2021 (ECF No. 774) at 24.) There are 321 staff members and 781 inmates, including Jeffries, at FMC Lexington who are fully vaccinated. FEDERAL BUREAU OF PRISONS, FCI Morgantown, https://www.bop.gov/coronavirus/ (last visited on May 19, 2021); (ECF No. 773-2 at 2-4; H.T. 3/31/2021 (ECF No. 774) at 11-12.)

Jeffries testified that he is afraid of COVID-19 variants and is concerned about whether his COVID-19 vaccine is effective against the variants, but he did not present any evidence about the

---

[11]    Nine inmates and 0 staff members at FMC Lexington died from COVID-19. FEDERAL BUREAU OF PRISONS, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited on May 19, 2021).

risk posed to him by the variants. Courts have recognized that "[a]lthough vaccines are not one hundred percent effective, the CDC states that '[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.' Vaccines are particularly effective at preventing 'severe illness and death.'" United States v. Singh, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated risk to such an extent that COVID-19, in combination with defendant's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release). In Singh, the defendant had underlying medical conditions that ordinarily would have placed the defendant at an increased risk of grave illness or death if he contracted COVID-19. The court concluded, however, that the defendant's vaccination against COVID-19 mitigated those risks. Id. at *3. The court's conclusion was "in accord with the vast majority of courts that have considered this issue." Id. (citations omitted). The court—recognizing that the defendant had the burden to show he was entitled to compassionate release—denied the defendant's motion for compassionate release without prejudice to the defendant's opportunity to file a new motion supported by evidence that the vaccine would not mitigate a substantial risk of serious illness from a COVID-19 infection. Id.

Here, there is one COVID-19 infection at FMC Lexington and Jeffries is fully vaccinated. Any risk posed to Jeffries being exposed and then contracting COVID-19 at FMC Lexington— even in light of COVID-19 variants—is speculative. Jeffries did not satisfy his burden to show that extraordinary and compelling reasons exist for his compassionate release. Jeffries' motion for compassionate release will, therefore, be denied without prejudice. He may seek reconsideration or file a new motion if his circumstances change or he has evidence to show that his risk of suffering grave illness or death if he contracts COVID-19 is not mitigated by his Moderna vaccination.

**2. Factors Set forth in 18 U.S.C. § 3553(a) and Applicable Policy Statements set forth in the United States Sentencing Guidelines**

Jeffries did not satisfy his burden to show that he exhausted his administrative remedies with respect to his desire to serve as a caregiver to his father or that his medical conditions in light of the COVID-19 are extraordinary and compelling circumstances warranting his release from incarceration. His motions for compassionate release will, therefore, be denied, and this court need not consider whether his compassionate release is warranted by the § 3553(a) factors or is consistent with applicable policy statements issued by the Sentencing Commission. See United States v. Korbe, No. 2:09-CR-05-NR-1, 2020 WL 6384368, at *3 (W.D. Pa. Oct. 30, 2020) ("Because Ms. Korbe does not show the requisite extraordinary and compelling reasons here, and the Court therefore is not 'reduc[ing] the term of imprisonment,' the Court need not address the section 3553(a) considerations."); United States v. Jackson, No. CR 18-413 (KSH), 2020 WL 6391182, at *3 (D.N.J. Oct. 30, 2020) ("Under the circumstances, the Court cannot find that an extraordinary and compelling reason for reduction in Jackson's term of imprisonment has been shown. Accordingly, the Court need not reach whether the sentencing factors under 18 U.S.C. § 3553(a) favor that relief or the issue of dangerousness under 18 U.S.C. § 3142(g).").

**V. Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Jeffries did not satisfy his burden under § 3582(c)(1)(A) to show that he exhausted his remedies within the BOP with respect to his desire to act as the caregiver to his father or that his medical conditions in light of the COVID-19 pandemic are extraordinary and compelling reasons for his premature release from imprisonment. His motions for compassionate release (ECF Nos. 705, 764) will, therefore, be denied. The denial is without prejudice and Jeffries' request may be reconsidered if his circumstances change or he

21

has evidence to show that his risk of becoming infected with COVID-19 is not mitigated by his Moderna vaccine.

 An appropriate order will be entered.

<div style="margin-left:40%">BY THE COURT:</div>

Dated: May 19, 2021    <u>/s/ JOY FLOWERS CONTI</u>
<div style="margin-left:40%">Joy Flowers Conti<br>Senior United States District Court Judge</div>